UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
UNITED STATES OF AMERICA,         :        CASE NO. 1:17-cv-651
                                  :        CASE NO. 1:14-cr-265
         Plaintiff,               :
                                  :
    vs.                           :        OPINION & ORDER
                                  :        [Resolving Docs. 71, 73, 76, 77]
JUAN PORTILLO,                    :
                                  :
         Defendant.               :
                                  :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Juan Portillo filed a motion to vacate his sentence under 28 U.S.C. § 2255.[1] Following a guilty jury verdict, the Court sentenced Portillo to a mandatory minimum of twenty years in prison because of his previous felony drug conviction.

Portillo alleges he received ineffective assistance of counsel because his counsel failed to advise him about a sentencing enhancement possibility if he rejected a plea agreement. Portillo also alleges that his counsel failed to object to the government's improper vouching of its testifying trial witnesses.

For the following reasons, the Court **DENIES** Portillo's motion.

## I. BACKGROUND

On August 12, 2014, a federal grand jury returned a one-count indictment against Portillo for conspiring to possess with intent to distribute cocaine and heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846.[2]

---

[1] Doc. 71. The government opposed. Doc. 73. Portillo replied. Doc. 76.
[2] Doc. 1.

On September 25, 2014, government counsel e-mailed Portillo's counsel, Jeffrey Hastings, about a potential plea agreement.[3] In the e-mail, the government offered to recommend an 87 to 108 month sentence if Portillo pleaded guilty to responsibility for three kilograms of cocaine and 600 grams of heroin.[4] More than a week later, Hastings replied that Portillo "has not given [him] authority to enter into plea negotiations with the Government and is insisting on a trial."[5]

On October 7, 2014, government counsel sent Hastings an unsolicited draft plea agreement.[6] The draft plea agreement would allow Portillo to plead to a reduced drug quantity under 21 U.S.C. § 841(b)(1)(B), instead of under 21 U.S.C. § 841(b)(1)(A) for which he was indicted.[7] Under this draft plea agreement, Portillo would be subject to a five-year mandatory minimum.[8]

The draft plea agreement also included a provision entitled "Statutory Enhancement Notice."[9] As part of this draft agreement, if Portillo pled guilty, the government would agree not to file a 21 U.S.C. § 851 notice of Portillo's prior felony drug conviction.[10] The agreement noted that if the government filed the § 851 notice, Portillo's penalty would be enhanced to a mandatory minimum of ten years.[11] The ten-year sentence was seemingly based on the drug quantity for which Portillo would plead responsibility and not the quantity for which he was indicted. The proposed Rule 11(c)(1)(B) plea agreement acknowledged that the sentencing judge would independently determine Guidelines calculations and the sentencing judge was not required to accept the plea agreement's drug quantity.[12]

---

[3] Resp. Ex. 1.
[4] *Id.*
[5] *Id.*
[6] Resp. Ex. 2.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

Portillo rejected the plea agreement.

On October 27, 2014, the government filed the § 851 notice seeking an enhanced statutory penalty based on Portillo's prior felony drug conviction in Wisconsin.[13] The notice indicated that Portillo would be subject to a twenty-year minimum sentence should he be found guilty for the indictment count.[14]

On the first scheduled trial day, the government stated to the Court that it had offered an initial plea proposal to Portillo and that Portillo rejected it.[15] The Court asked Portillo whether Portillo had been advised about the plea agreement:

> The COURT: Mr. Portillo, were you advised that there had been some offer of a plea agreement?
> THE DEFENDANT (through interpreter): Yes.
> THE COURT: And did you reject the idea of entering a guilty plea?
> THE DEFENDANT (through interpreter): Yes.[16]

At trial, cooperating witnesses, Alexander Abreu and Richard Price, testified against Portillo. During direct examination, government counsel elicited testimony concerning their cooperation:

> Q: And early on, after you were charged, did you cooperate with the Government and sit down with us and tell us what you did and who you were doing it with?
> A (Price): Yes, I did.
> Q: Okay. And did -- did the Government give you some consideration for your cooperation?
> A (Price): Yes, sir.
> Q: So the time that you're serving is less than it would have been had you not cooperated; is that correct?
> A (Price): Yes.
> Q All right. And you have a plea agreement which spells that out, which allows for you to be sentenced by Judge Gwin to less time; is that correct?
> A (Price): Yes, sir.
> Q: All right. Does the plea agreement also require that you continue to cooperate and provide truthful testimony if called upon to do so by the Government?

---

[13] Doc. 21.
[14] *Id.*
[15] Doc. 64 at 3:22-4:4.
[16] *Id.* at 4:5-10.

A (Price): Yes, sir.[17]

Q: I'll rephrase the question. As part of the plea agreement, are you required or did you agree to testify if the Government asked you?
A (Abreu): Yes.
Q: Did you agree to provide truthful testimony?
A (Abreu): Yes.
Q: Were you already sentenced in this case?
A (Abreu): Yes.
Q: And are you currently serving a sentence in federal prison?
A (Abreu): Yes.
Q When you were sentenced, did you receive a lower sentence because you agreed to cooperate with the Government?
A (Abreu): Yes.[18]

On November 4, 2014, a jury returned a guilty verdict on count one of the indictment.[19] On February 3, 2015, the Court imposed a 240-month statutory minimum sentence.[20]

Portillo appealed his conviction to the Sixth Circuit, which affirmed the judgment on November 18, 2015.[21] The Supreme Court denied Portillo's writ of certiorari on March 28, 2016.[22]

On March 28, 2017, Portillo filed a timely Motion to Vacate under 28 U.S.C. § 2255.[23] With his motion, Portillo argues that he had received ineffective assistance of counsel because Hastings had failed to (1) advise him of the consequences of a § 851 notice and (2) object to the government's improper vouching of its cooperating testifying witnesses.[24] Portillo also sought an evidentiary hearing concerning Hastings' advice about the § 851 enhancement issue.[25]

On October 27, 2017, the Court held an evidentiary hearing on the § 851 enhancement issue.[26]

---

[17] *Id.* at 91:24-92:16.
[18] *Id.* at 171:11-25.
[19] Doc. 41.
[20] Doc. 56. The Court entered final judgment on February 4, 2015. Doc. 57.
[21] Doc. 68.
[22] Doc. 70.
[23] Doc. 71.
[24] *Id.*
[25] *Id.*
[26] At the hearing, the Court granted the government's unopposed motion (Doc. 77) for waiver of Portillo's attorney client privilege for purposes of this habeas petition. Oct. 27, 2017 Tr. at 2:12-25.

Case Nos. 1:17-cv-651; 1:14-cr-265
Gwin, J.

At the evidentiary hearing, Hastings testified that he had communicated with Portillo about a sentencing enhancement if Portillo rejected a plea agreement and the government consequently filed the § 851 notice.[27]

Hastings' timesheet indicates that he met with the government on October 7, 2014 regarding Portillo's case.[28] His notes indicate that he had discussed with the government the possibility of the § 851 enhancement filing. His notes reflect that the § 851 enhancement would require Portillo to serve at least twenty years.[29] Hastings met with Portillo in person on October 9, 2014. Hastings' timesheets support this.[30] At the final pretrial conference on October 10, 2014, Hastings stated that Portillo had not authorized him to negotiate a plea agreement.[31] Portillo was present when Hastings stated that Portillo refused to negotiate any plea agreement.

Almost two years after his conviction and on June 15, 2016, Portillo sent Hastings a letter claiming Hastings never informed him that he could receive 240 months of imprisonment if he testified.[32]

At the hearing, Portillo testified that Hastings never informed him about the § 851 enhancement.[33] He testified he believed he would face at most thirteen years should he reject the plea agreement.[34] Portillo was sixty-six years old when he considered the plea agreement and had heart problems since he was 10 years old, had been hospitalized numerous times due to heart issues and saw his cardiologist quarterly.[35]

---

[27] Oct. 27, 2017 Tr. at 13:23-14:1, 19:10-20:2, 32:1-9, 37:13-19, 43:10-23.
[28] Pet. Ex. G.
[29] In his written notes from the October 7, 2014 meeting with the government, Hastings writes, "Convicted of . . . kilo of Heroin + 5 kilos of Cocaine 10 yr. min . . . 851 makes it 20 years." Resp. Ex. 7.
[30] Pet. Ex. G.
[31] Doc. 83 at 5:16-20.
[32] Pet. Ex. H.
[33] Oct. 27, 2017 Tr. at 52:9-19.
[34] *Id.* at 53:9-12.
[35] *Id.* at 52:19-20, 57:22-24; Doc. 66 at 5:21-6:1; Sealed Doc. 51 at 11.

-5-

Hastings and Portillo both testified that they did not have a Spanish language interpreter during their in-person meetings.[36] Hastings testified that Portillo had a basic command of English and would seek clarification if he did not understand.[37]

Although Portillo testified he did not understand the legal discussions with Hastings, he acknowledged that he would always seek clarification if he did not understand.[38] Portillo also testified that he could understand English numbers discussions.[39] At his arraignment, Portillo told the Court that he sufficiently understood English and said he did not need an interpreter.[40]

## II. LEGAL STANDARD

Title 28 United States Code Section 2255 gives a federal prisoner post-conviction means of collaterally attacking a conviction or sentence that violates federal law. Section 2255 provides four grounds upon which a federal prisoner may challenge his conviction or sentence:

> 1) That the sentence was imposed in violation of the Constitution or laws of the United States;
> 2) That the court was without jurisdiction to impose such sentence;
> 3) That the sentence exceeded the maximum authorized by law; or
> 4) That the sentence is otherwise subject to collateral attack.[41]

To prevail on a § 2255 motion alleging a constitutional error, the movant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."[42]

---

[36] Oct. 27, 2017 Tr. at 47:24-48:13, 29:20-24.
[37] *Id.* at 31:9-16.
[38] *Id.* at 54:24-55:5.
[39] *Id.* at 55:6-56:7.
[40] Doc. 87 at 2:18-20.
[41] 28 U.S.C. § 2255(a).
[42] *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

## III. ANALYSIS

**A. Ineffective Assistance of Counsel**

Portillo argues that Hastings was ineffective for (1) failing to advise him about the sentencing consequences of a § 851 enhancement and (2) failing to object to the government's improper vouching of its testifying witnesses.

Under *Strickland v. Washington*, to prevail on an ineffective assistance of counsel claim, a prisoner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense.[43] A prisoner alleging ineffective assistance of counsel bears "a heavy burden of proof."[44] A prisoner cannot satisfy this burden by making conclusory allegations unless supported by specific facts.[45]

First, to prove deficient performance, a prisoner must identify specific acts that were "outside the wide range of professionally competent assistance."[46] When evaluating this prong, the Court is highly deferential when scrutinizing counsel's performance.[47]

Second, a prisoner must generally show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[48] A reasonable probability is one that is sufficient to undermine confidence in the outcome of the proceedings.[49]

---

[43] 466 U.S. 668, 687 (1984).
[44] *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005); *see also Smith v. United States*, No. 5:06-CR-00310, 2010 WL 4362863, at *4 (N.D. Ohio Oct. 27, 2010).
[45] *United States v. Cronic*, 466 U.S. 648, 666 (1984) ("Respondent can therefore make out a claim of ineffective assistance only by pointing to specific errors made by trial counsel."); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (denying ineffective assistance counsel claim where allegations were "merely conclusory").
[46] *Strickland*, 466 U.S. at 690.
[47] *Id.* at 689.
[48] *Id.* at 694.
[49] *Id.*

### 1. Failure to Advise of Section 851 Enhancement

#### *a. Deficient Performance*

"A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available."[50]

Portillo, however, fails to show Hastings failed to properly advise him of the § 851 issue.

First, credible evidence from the evidentiary hearing demonstrates that Hastings conveyed the § 851 enhancement issue and the sentencing consequences of the § 851 enhancement filing to Portillo.

Hastings testified with certainty that he had communicated with Portillo about the issue.

Admitted exhibits support his testimony. Hastings' timesheet shows that he met with the government on October 7, 2014. Hastings' notes from that conference with the government show Hastings was aware that a § 851 notice filing if Portillo went to trial would give Portillo a twenty-year mandatory minimum sentence if he were found guilty. Hastings' timesheet also shows that he met with Portillo in person two days later, on October 9, 2014. The next day, at the final pretrial conference, Hastings stated to the Court that Portillo had not authorized him to negotiate a plea agreement.

Attorney Hastings had early and consistently encouraged Portillo to consider a plea agreement. No plausible reason supports the argument that Hastings would fail to tell Portillo that the government would file the § 851 enhancement and to tell Portillo that the enhancement would result in a twenty-year mandatory minimum sentence.

From this evidence, it can be reasonably inferred that Hastings told Portillo that he could face a twenty-year sentence should he go to trial and the government file a § 851 notice.

---

[50] *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).

Portillo, however, argues that because the draft plea agreement only mentioned a minimum ten-year sentence, he could not have been informed about the minimum twenty-year sentence if he went to trial and the government filed a § 851 notice. While the government incorrectly calculated the minimum sentence in the draft plea agreement, Hastings' testimony and notes support that he specifically advised Portillo about a minimum twenty-year sentence.

Portillo's testimony to the contrary is also less credible. In the Court's colloquy with Portillo before trial, Portillo stated that he had been informed of the plea agreement and rejected it. It took more than a year after his sentence for Portillo to claim he was never informed of the § 851 issue.

Second, it is not clear that Hastings was deficient because he failed to utilize an interpreter during in-person meetings with Portillo. Portillo testified that he would not have been able to understand the § 851 enhancement, even if Hastings had informed him, because Hastings did not use a Spanish language interpreter during their in-person meetings.[51]

However, Hastings testified that Portillo had some command of English and would ask for clarification when he did not understand. Portillo confirmed that he would always ask for clarification if he did not understand. Portillo also testified that he could understand numbers discussions. In addition, at his arraignment, Portillo stated he did not need an interpreter and could sufficiently understand English without an interpreter. Therefore, the Court cannot find that Hastings' failure to use an interpreter was deficient performance.

Accordingly, the Court finds that Portillo has not shown the first ineffective assistance of counsel prong.

---

[51] Oct. 27, 2017 Tr. at 3:10-15.

Case Nos. 1:17-cv-651; 1:14-cr-265
Gwin, J.

### b. *Prejudice*

Even assuming that Hastings' performance had been deficient, Portillo fails to show prejudice.

Where a defendant claims he would have accepted a plea agreement had his counsel effectively advised him, the defendant must show that

> "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."[52]

Portillo fails to show that he would have actually accepted a plea agreement had Hastings informed him of the § 851 enhancement.[53] Hastings' email to the prosecutors, as well as Portillo's hearing testimony, shows that Portillo was intent on going to trial. At the evidentiary hearing, Portillo insisted on his innocence.[54]

Furthermore, Portillo was sixty-six years old and faced heart conditions during the 2014 plea negotiations. The government had proposed a Rule 11(c)(1)(B) plea agreement that attributed lesser drug quantities to Portillo. But the government's proposed plea recognized such government quantity recommendation did not bind the court.

Portillo does not show it illogic for an older defendant with heart problems to choose a jury trial. He faced five to ten years should he have pleaded guilty, or a twenty-year minimum if Hastings had informed him of the § 851 enhancement issue and a jury found him guilty. Under

---

[52] *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).
[53] The government argues that it never formally promised not to file an § 851 if Portillo pled guilty. Oct. 27, 2017 Tr. at 69:2-10. Even if it were a formal offer, however, evidence shows that Portillo would not likely have even accepted such an arrangement.
[54] Oct. 27, 2017 Tr. at 59:1-3.

-10-

Case Nos. 1:17-cv-651; 1:14-cr-265
Gwin, J.

Portillo's circumstances, it is reasonable to infer that Portillo would have taken the risk of trial, even if Hastings had informed him of the § 851 enhancement issue.

Moreover, it is not clear that the Court would have accepted the plea agreement's attributable drug quantity recommendations. The draft plea agreement reflects that Portillo would plead to responsibility for a drug quantity that was reduced from the indicted quantity.[55] This reduction, in turn, would allow the government to recommend a five-year minimum year sentence under 21 U.S.C. § 841(b)(1)(B), rather than a ten-year minimum sentence under 21 U.S.C. § 841(b)(1)(A).

However, with a Rule 11(c)(1)(B) plea, "such a recommendation or request does not bind the court."[56] The Court, and not the government, retains authority to determine the drug quantity appropriate for sentencing.[57] And it is not clear that the Court would have accepted the plea agreement's noted drug quantity such as to slot Portillo's offense under § 841(b)(1)(B). As a result, it is not reasonably probable that Portillo would have been prejudiced, even if Portillo had pleaded guilty based on Hastings' advisement and the plea agreement.

Portillo's ineffective assistance of counsel claim on this basis thus fails.

**2. Improper Vouching**

Portillo next claims that Hastings was ineffective because he failed to object to the improper government vouching.[58]

Portillo argues that the government engaged in improper vouching when it elicited direct testimony from Abreu and Price concerning their plea agreements.[59] Portillo argues that when the government gave testimony that Abreu and Price were required to give truthful testimony in

---

[55] Resp. Ex. 2.
[56] Fed. R. Crim. P. 11
[57] *United States v. Page*, 58 F. App'x 79, 83 (6th Cir. 2003).
[58] Doc. 71-1 at 23-27; Doc. 76 at 5-6.
[59] *Id.*

-11-

exchange for lower sentences, the government led the jury to believe that it verified the testimonies' accuracy.[60] The government responds that it did not offer or imply any personal opinion about the witnesses' truthfulness, and therefore did not engage in improper vouching.[61]

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness."[62] Such impropriety occurs either through "blunt comments asserting personal belief, or comments that imply special knowledge of facts not before the jury or the credibility or truthfulness of the witness."[63]

For example, improper vouching can occur when a prosecutor explains that his or her sentencing recommendation for the witness depends on the testifying witness's truthfulness.[64] Otherwise, prosecutors are permitted to "elicit testimony about [a plea agreement's] terms, attack the credibility of the witness because of it and even refer to the plea agreement of a government witness in an attempt to deflect defense counsel's use of the agreement to attack the witness's credibility."[65]

Here, the government simply elicited terms of the testifying witnesses' plea agreements. The government did not appear to offer any blunt comments or personal opinions as to the witnesses' truthfulness. The government also did not explain that it would be making sentencing recommendations contingent on the witnesses' truthfulness.

---

[60] *Id.*
[61] Doc. 73 at 21-22.
[62] *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999).
[63] *United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010).
[64] *Francis*, 170 F.3d at 550.
[65] *Id.*; *United States v. Wells*, 623 F.3d 332, 341 (6th Cir. 2010).

Case Nos. 1:17-cv-651; 1:14-cr-265
Gwin, J.

Because the government did not engage in improper vouching, Hastings could not have been deficient in failing to object to the government's questioning. Portillo's ineffective assistance of counsel claim on this basis also fails.

Accordingly, the Court denies Portillo's ineffective assistance of counsel claim.

**B.  Cumulative Errors**

Portillo claims that cumulative errors deprived him of his Sixth Amendment right to counsel.[66]

Claims of cumulative error are not cognizable grounds for habeas relief.[67] The Sixth Circuit has stated that "[t]he Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."[68]

Moreover, as the Court notes above, the alleged errors do not cumulatively amount to a constitutional violation.  Therefore, the Court declines to grant relief to Portillo on this basis.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** Portillo's motion.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith and no basis exists upon which to issue a certificate of appealability.[69]

IT IS SO ORDERED

Dated:  November 7, 2017                                         *s/          James S. Gwin*
                                                                              JAMES S. GWIN
                                                                              UNITED STATES DISTRICT JUDGE

---

[66] Doc. 71-1 at 27.
[67] *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004).
[68] *Id.* (quoting *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002)).
[69] *See* 28 U.S.C. 2253(c); Fed. R. App. P. 22(b).

-13-